**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**LANCER INSURANCE COMPANY,**

          Plaintiff,

**v.**
                                      **CIVIL ACTION NO. 3:11-CV-111**
                                      **(JUDGE GROH)**

**VIP LIMOUSINE SERVICE, LTD.;**
**GLEN M. LEE d/b/a/ VIP LIMOUSINE, LTD.;**
**DAVID SNYDER and MARY SNYDER, Personal**
**Representatives of the Estate of**
**Michael C. Snyder, Deceased; and**
**LEE JAMES CRAWFORD,**

          Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF LANCER**
**INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING**
**DEFENDANTS DAVID AND MARY SNYDER'S MOTION FOR SUMMARY**
**JUDGMENT**

      The Court has several motions pending before it.  The first motion is Plaintiff Lancer

Insurance Company's ("Lancer") Motion for Summary Judgment [Doc. 22], filed on October

16, 2012.    The Defendants David and Mary Snyder, Personal Representatives of the

Estate of Michael C. Snyder, deceased, filed their Response to this Motion for Summary

Judgment [Doc. 24] on November 9, 2012.   Plaintiff Lancer filed its Reply on January 14,

2013.  On January 15, 2013, Defendants David and Mary Snyder filed a Motion to Strike

Plaintiff's Untimely Reply Memorandum [Doc. 30].    On January 16, 2013, the Court

granted Defendants' Motion to Strike because Plaintiff Lancer's Reply was untimely.

Therefore, Plaintiff Lancer's Reply was not considered in rendering this order.

On January 18, 2013, Defendants VIP Limousine Service, Ltd. ("VIP"), and Glen M. Lee d/b/a VIP Limousine, Ltd.'s ("Lee") filed their Motion for Summary Judgment [Doc. 34], adopting and incorporating by reference Plaintiff Lancer's Motion for Summary Judgment and its Reply.   Therefore, the Court's ruling on Plaintiff Lancer's Motion for Summary Judgment is also a ruling on Defendants VIP and Lee's Motion for Summary Judgment. On February 8, 2013, Defendants David and Mary Snyder filed their Response to Defendants VIP and Lee's Motion for Summary Judgment [Doc. 39].   On February 19, 2013, Plaintiff Lancer Insurance Company, by its counsel, filed a reply to Defendants David and Mary Snyder's Motion for Summary Judgment [Doc. 54].

On March 4, 2013, Defendants David and Mary Snyder filed a Motion to Strike Plaintiff's Improper Reply Memorandum [Doc. 56].   In support of their motion, Defendant argue that "Lancer failed to file a response in support of or in opposition to VIP's motion" and "[w]hile VIP had the right to file a reply brief after the Snyders' response brief, Lancer did not." ([Doc. 56], p. 2).   The Court, having seen and inspected Defendants David and Mary Snyder's motion, finds good cause to **GRANT** it.   Therefore, Plaintiff Lancer's reply to Defendants David and Mary Snyder's Motion for Summary Judgment was not considered in rendering this opinion.

On January 18, 2013, Defendants David and Mary Snyder filed their Motion for Summary Judgment [Doc. 35].   On January 29, 2013, Plaintiff Lancer Insurance Company filed its Response to Defendants David and Mary Snyder's Motion for Summary Judgment. [Doc. 38].   On February 13, 2013, Defendants David and Mary Snyder filed their Reply [Doc. 49].

All of the summary judgment motions have been fully briefed and are ripe for this

Court's consideration.  For the following reasons, this Court **GRANTS** Plaintiff Lancer's Motion for Summary Judgment and Defendants VIP and Lee's Motion for Summary Judgment and **DENIES** Defendants David and Mary Snyder's Motion for Summary Judgment.

## I.  Background

Plaintiff Lancer filed the instant declaratory judgment action in the Northern District of West Virginia pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, on December 19, 2011.  The basis of jurisdiction is diversity.  Lancer seeks a declaration from this Court as to the applicability of coverage under an insurance policy Lancer issued to its insured, VIP, as well as the inapplicability of the policy's Endorsement MCS-90 ("MCS-90").[1]

This declaratory judgment action arises out of an underlying personal injury action entitled ***David Snyder and Mary Snyder, Personal Representatives of the Estate of Michael C. Snyder, Deceased v. Huntfield, L.C., et al.,*** filed in the Circuit Court of Jefferson County, West Virginia, civil action number 06-C-243 ("underlying action").  The underlying facts occurred on July 19, 2004, at a roadway improvement project in Charles Town, West Virginia.  A vehicle driven by Defendant Lee Crawford ("Crawford") struck and killed Michael C. Snyder, who was working as a flagman on a construction site.  At the time of the collision, Crawford was operating a 2004 Pontiac Sunfire, owned by Sharon K.

---

[1]An MCS-90 is an endorsement required by the Federal Motor Carrier Safety Regulations on certain liability insurance policies for for-hire motor carriers transporting passengers in interstate or foreign commerce.  The endorsement serves the function of a surety for the safety of the public.  Even if the insured is not entitled to coverage due to an exception or exclusion, an injured member of the public may recover under the endorsement, and the insurer may then seek reimbursement from the insured.

Wilson,[2] and Crawford had three passengers in the vehicle: Heather Strachan ("Strachan"), Warren "Bubba" Weaver, and Rosemary Livingood.

Defendants alleged in the underlying action that at the time of the motor vehicle accident, both Crawford and Strachan were in the course and scope of their employment as a driver and employee for VIP.  VIP argued that Crawford and Strachan were not employees or agents of VIP.  Defendant VIP is a transportation company based in Keyser, West Virginia, and it  transports Medicaid and Medicare recipients to medical and other appointments.  Plaintiff Lancer issued an insurance policy to Defendant VIP from May 1, 2004 to May 1, 2005.  VIP's insurance policy with Lancer provided that only the autos specifically described on the declarations page attached to the policy were "covered autos." On April 6, 2005, Lancer first received notice of the incident involving Crawford and Snyder. By letter dated May 5, 2005, Lancer disclaimed coverage to VIP based on the terms and certain exclusions set forth under the policy issued by Lancer to VIP.  Specifically, Lancer claimed that the vehicle involved in the incident, a 2004 Pontiac Sunfire, was not described on the Lancer-VIP policy.  However, Lancer agreed to provide a gratuitous defense due to the potential implication of a MCS-90B endorsement on the Lancer policy.

This matter went to trial in the Circuit Court of Jefferson County, West Virginia.  The jury returned a verdict finding that Crawford was 100% liable for Michael Snyder's death, that Crawford was engaged in a joint venture with Strachan, and that neither Crawford or Strachan were employees or agents of VIP acting in the course and scope of their employment at the time of the fatal collision. ([Doc. 22], Ex. 3).  Special interrogatories were

---

[2]Sharon K. Wilson is Heather Strachan's mother.  There are no allegations that Wilson was an employee or agent of VIP at the time of the collision.

submitted to the jury concerning whether VIP was vicariously liable for the acts of Crawford and/or Strachan.  The state court entered a judgment that VIP was not vicariously liable for the judgment against Crawford and Strachan.  The jury returned a verdict against Crawford in the amount of $2,509,308.00 in compensatory damages and $300,000.00 in punitive damages.  The trial court's judgment was affirmed after appeals and is final.

## II.  Legal Standard

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment.  *See* **FED. R. CIV. P. 56.**  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 106 S. Ct. at 2511, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show an absence of material fact, the party opposing

summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. **FED. R. CIV. P. 56**; **Celotex Corp.**, 166 S. Ct. at 2552-54, 477 U.S. at 323-25; **Anderson**, 106 S. Ct. at 2510, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 106 S. Ct. at 2511; 477 U.S. at 249 (citations omitted).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. **ITCO Corp. v. Michelin Tire Corp.**, 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve issues of material facts on a motion for summary judgment–even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." **Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.**, 381 F.3d 245 (4th Cir. 1967); *see also* **Anderson**, 477 U.S. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

### III.  Discussion

Plaintiff Lancer's Motion for Summary Judgment seeks a declaratory judgment ordering that VIP's policy issued by Lancer does not provide coverage for any of the parties to the underlying third party action and that the MCS-90 is inapplicable. Defendants David and Mary Snyder argue that genuine issues of material fact preclude summary judgment in favor of Plaintiff.

Defendants David and Mary Snyder have also filed a Motion for Summary Judgment. The Snyders' Motion for Summary Judgment makes two arguments. First, the Snyders argue that, as a matter of law, Crawford is an insured under the policy, and Lancer is required to pay its limits in partial satisfaction of the judgment against Crawford under the VIP policy issued by Lancer. Second, the Snyders argue that, as a matter of law and public policy, the MCS-90B to the Lancer policy mandates that Lancer is required to pay its limits in partial satisfaction of the judgment against Crawford.

Therefore, the Court has three main issues to address. The first issue is whether collateral estoppel applies to the jury verdict in the underlying action. The second issue is whether the Lancer issued VIP insurance policy provides coverage. The third issue is, if the policy does not provide coverage, whether the MCS-90B applies.

### 1.   Collateral Estoppel and the Effect of the Jury Verdict in the Underlying Action

Plaintiff Lancer argues in its Motion for Summary Judgment that collateral estoppel bars the relitigation of the employment status of both Lee Crawford and Strachan because the jury in the underlying action found the following: (1) that Lee Crawford was not an agent or employee of VIP or Glen Lee acting within the course and scope of his employment and (2) that Strachan was not an agent or employee of VIP or Glen Lee acting within the course and scope of her employment. ([Doc. 22], Ex. 3).

A federal court sitting in diversity must apply the substantive law of the state in which it sits. *See* ***Benner v. Nationwide Mut. Ins. Co.***, 93 F.3d 1228, 1234 (4th Cir. 1996). In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel. ***Kremer v.***

7

*Chem. Const. Corp.*, 456 U.S. 461, 102 S. Ct. 1883 (1982); *Hagan v. McNallen*, 62 F.3d 619, 623-24 (4th Cir. 1995).  The doctrine of collateral estoppel, or issue preclusion, "applies to issues that were actually litigated in an earlier suit even though the causes of action are different."  *Mellon-Stuart Co. v. Hall*, 359 S.E.2d 124, 132 (W. Va. 1987). "Collateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgment to which such determination was essential to the judgment."  *State v. Miller*, 459 S.E.2d 114, 120 (W. Va. 1995).  For collateral estoppel to apply, four conditions must be met:

> **(1)** the issue previously decided is identical to the one presented in the action in question;
>
> **(2)** there is a final adjudication on the merits of the prior action;
>
> **(3)** the party against whom the doctrine is invoked was a party or in privity with a party to a prior action;
>
> **(4)** the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.*  The determination of the issue in the prior proceeding must have been "essential to the judgment" for issue preclusion to apply.  *Rowe v. Grapevine Corp.*, 527 S.E.2d 814, 821 (W. Va. 1999).

In this proceeding, Lancer relies on the findings made by the jury in the underlying action that neither Crawford nor Strachan were agents or employees of VIP or its owner, Glen Lee.  Additionally, Lancer argues that the jury's determination that Crawford and Strachan were not acting within the course and scope of employment with VIP or Glen Lee

8

should be conclusive.  For the jury's findings to be conclusive, the four elements of collateral estoppel must be met.

### a. Issue Previously Decided is Identical to the One Presented in this Action

The Court's inquiry begins with the first factor of the *Miller* test: whether the issue previously decided is identical to the one presented in this action. *See* Syl. Pt. 1, ***Miller***, 459 S.E.2d 114.  In this case, Plaintiff Lancer argues that collateral estoppel bars the relitigation of Crawford's and Strachan's employment status, and Lancer summarily states "[i]t is clear that the issue and fact are identical in the underlying litigation . . . ."  ([Doc. 23], p. 5).  However, Defendants David and Mary Snyder argue that the various liability issues decided in the underlying action are not identical to the insurance coverage issues presented in this case. ([Doc. 24], p. 20).

In determining whether the issues are identical, the West Virginia Supreme Court recognized that an issue presented "is not identical if the second action involves different facts, legal standards or procedures."  ***Miller***, 459 S.E.2d at 121.  To begin the analysis, the Court must determine whether the definition used in the underlying action to determine that Crawford and Strachan were not "employees" is the same definition used to determine that they are not "employees" under the policy.  When construing the language in an insurance policy, the Supreme Court of Appeals of West Virginia has held that "language in an insurance policy should be given  its plain, ordinary meaning."  Syl. Pt. 1, ***Soliva v. Shand, Morahan & Co.***, 345 S.E.2d 33 (W. Va. 1986), *overruled, in part, on other grounds by* ***Nat'l Mut. Ins. Co. v. McMahon & Sons***, 356 S.E.2d 488 (W. Va. 1987).  If the provisions in an insurance policy are clear and unambiguous, "they are not subject to

9

judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714, 715 (W. Va. 1970). However, "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. Pt. 1, *Prete v. Merchants Prop. Ins. Co.*, 223 S.E.2d 441 (W. Va. 1976). Whether a term in a contract is ambiguous is a question of law determined by the court. Syl. Pt. 1, *Berkeley Co. Pub. Serv. v. Vitro Corp.*, 162 S.E.2d 189 (W. Va. 1968). If the court determines that the policy provision is ambiguous, "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. Pt. 4, *McMahon & Sons*, 356 S.E.2d 488, *overruled on other grounds by Potesta v. U.S. Fidelity & Guaranty Co.*, 504 S.E.2d 135 (1998).

In this case, the policy provides:

"Employee" includes a "leased worker." "Employee" does not include a "temporary worker." [Doc. 22-1], p. 21.

A leased worker is defined as:

a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker." *Id.*

A temporary worker is defined as:

a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions. *Id.* at 22.

First, the term "employee" is unambiguous. To determine its meaning, we look to the "common and customary meaning" of the term. *See Boggs v. Camden-Clark Mem'l*

*Hosp. Corp.*, 693 S.E.2d 53, 57-58 (W. Va. 2010).  For instance, Black's Law Dictionary defines "employee" as "[a] person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance."  *Black's Law Dictionary* (9th ed. 2009). West Virginia case law provides that "[i]f the right to control or supervise the work in question is retained by the person for whom the work is being done, the person doing the work is an employee and not an independent contractor, and the determining factor in connection with this matter is not the use of such right of control or supervision but the existence thereof in the person for whom the work is being done." ***Mountain Lodge Ass'n v. Crum & Forster Indem. Co.***, 558 S.E.2d 336 (W. Va. 2001) (quoting Syl. Pt. 2, ***Spencer v. Travelers Ins. Co.***, 133 S.E.2d 735 (W. Va. 1963)).  The focus of the jury's inquiry was whether Crawford and Strachan were acting within the course and scope of employment for VIP or Glen Lee on the date of the collision.  The jury instruction, in pertinent part, stated:

> Plaintiffs have alleged that Lee Crawford and/or Heather Strachan were the agents or employees of V.I.P. Limousine Services, Ltd and/or Glen Lee on July 19, 2004.  If an agent or employee is acting within the scope of his agency or employment, then his principal or employer may also be held liable under the doctrine of respondeat superior.  An agent or employee is acting within the scope of authority if the agent or employee is engaged in the performance of duties which were assigned to the agent by the principal or employer.  An employer's liability attaches regardless of whether the employer knew or should have known of the employee's negligence as long as the employee is acting within the scope of employment.

([Doc. 24-15], p. 5-6). The jury instruction also explains that "[a]n agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the

11

services." ([Doc. 24-15], p. 20).  The law applied by the jury to determine that Crawford and Strachan were not agents or employees of Glen Lee or VIP reflects the plain, ordinary meaning of "employee" under the Black's Law Dictionary's definition and West Virginia case law's definition.  Also, the jury verdict form asked the jury to determine whether Crawford or Strachan were agents or employees of Glen Lee or VIP acting within the course and scope of employment.  The jury returned a verdict of "no" for each of these questions. ([Doc. 22], Ex. 3).

Second, Defendants David and Mary Snyder have not raised the issue of whether Crawford or Strachan were "leased employees" under the policy's definition.  A leased worker is defined as:

> a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

*Id.*  Here, there are simply no facts suggesting that Crawford or Strachan were leased to VIP by a labor leasing firm.  Thus, Crawford and Strachan are not leased workers under the policy's definition.

Third, Defendants David and Mary Snyder argue that the definition of "employee" used in the underlying action is not determinative of Crawford's status as an insured.  In support of this argument, Defendants point out that the definition of employee under the Motor Carrier Act differs from the definition of employee used in the underlying action because the Motor Carrier Act defines employee as "an operator of a commercial motor vehicle (including an independent contractor when operating commercial motor vehicle) . . ." **49 U.S.C. § 31132(2)**.  Although the definition of an employee under the Motor Carrier Act is not identical to the definition of an employee utilized by the jury in the underlying

action, it does not necessitate a finding that the issue in the underlying action is different from the issue in this case.  The definition of an employee under the Motor Carrier Act applies only to that Act.  *See* **49 U.S.C. § 31132** (noting that the definition applies "in this subchapter). The Motor Carrier Act's definition of employee is not relevant to the issue of coverage pursuant to the policy, and the proper issue is whether the policy's definition of "employee" is identical to the definition applied by the jury in the underlying action.

Because the Court finds that the issues are identical, the first element is satisfied.

### b.  Final Adjudication on the Merits of the Prior Action

The second element is clearly met.  In the underlying action, the jury rendered its verdict finding Crawford one hundred (100) percent liable. ([Doc. 22], Ex. 3). The federal courts "generally have also consistently accorded preclusive effect to issues decided by state courts.  Thus, res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system."  *Allen v. McCurry*, 449 U.S. 90, 95-96, 101 S. Ct. 411, 415 (1980) (internal citations omitted). Because there was a final adjudication on the merits of the underlying action, the second element is satisfied.

### c.  Party Against Whom the Doctrine is Invoked was a Party or in Privity with a Party to a Prior Action

The doctrine of collateral estoppel is invoked by Lancer against David and Mary Snyder.  In the underlying action, the Snyders were the Plaintiffs.  Thus, the Snyders were parties in the underlying action, and the third element is satisfied.

### d.  Party Against Whom the Doctrine is Raised had a Full and Fair Opportunity

13

### to Litigate the Issue in the Prior Action

The fourth element requires that the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  Defendants David and Mary Snyder had a full and fair opportunity to have their claims heard in the underlying action.  As Plaintiffs in the underlying action, the Snyders had a prior opportunity to present their evidence and arguments regarding the employment status of Crawford and Strachan. This issue was vigorously contested in the underlying action, and the jury instructions and jury verdict form address the issue of Crawford's and Strachan's employment status. *See* ([Doc. 22], Ex. 3); ([Doc. 24], Ex. 15).  Additionally, the issue of Crawford's and Strachan's employment status was essential to the judgment because the jury was required to assess VIP's liability under the legal principles of agency and *respondeat superior*.

Accordingly, Plaintiff Lancer has satisfied all four elements for collateral estoppel to apply.  However, because Lancer is a plaintiff who was a non-party to the underlying action, the Court is required to assess whether allowing it to rely on the doctrine of offensive collateral estoppel might be unfair to Defendants David and Mary Snyder.  *See **Holloman v. Nationwide Mut. Ins. Co.**,* 817 S.E.2d 816 (W. Va. 2005).

### e. Offensive Collateral Estoppel

Plaintiff Lancer's assertion of collateral estoppel based on litigation between the current Defendant and another party in the underlying action is "offensive collateral estoppel" because Lancer was not a party in the underlying action. *See **Holloman**,* 817 S.E.2d at 822.  The West Virginia Supreme Court of Appeals follows the rule stated in ***Parklane Hosiery Co.*** regarding the application of the doctrine of offensive collateral

14

estoppel.  *See **Conley v. Spillers***, 301 S.E.2d 216, 224 (W. Va. 1983).  Under offensive collateral estoppel, the doctrine requires four nonexclusive factors to be considered: (1) whether Lancer could easily have joined in the earlier proceeding; (2) whether Defendants David and Mary Snyder "had an incentive in the prior action to have defended the action fully and vigorously"; (3) whether Defendants David and Mary Snyder have ever obtained a ruling that Crawford and Strachan were VIP's agents or employees at the time of the collision; and (4) whether procedural opportunities are available to Defendants David and Mary Snyder in the present proceeding that were unavailable to them in the underlying action.  *See **Parklane Hosiery Co. v. Shore***, 439 U.S. 322, 99 S. Ct. 645 (1979).

These additional considerations do not change the result to permit collateral estoppel.  The first consideration, opportunity to join the earlier action, appears to weigh against offensive collateral estoppel.  However, in the underlying action, Plaintiff Lancer defended its potential insured, VIP, and litigated the issue of Crawford and Strachan's employment status.  Thus, Plaintiff Lancer was in "privity" with its insured VIP because they shared an identity of interest.

The second consideration weighs in favor of permitting offensive collateral estoppel because Defendants David and Mary Snyder, as Plaintiffs in the underlying action, had an incentive to vigorously argue that Crawford and Strachan were employees of VIP.  In fact, the issue was vigorously argued, and whether Crawford or Strachan were acting within the course and scope of employment was thoroughly explained to the jury through the jury instructions in the underlying action.

The third consideration weighs in favor of permitting collateral estoppel because

Defendants David and Mary Snyder never obtained a ruling that Crawford and Strachan were VIP's agents or employees at the time of the collision.  Last, the fourth consideration weighs in favor of allowing offensive collateral estoppel because Defendants David and Mary Snyder have not pointed to any procedural opportunities in the present action that were unavailable in the underlying action.  Therefore, Defendants David and Mary Snyder had a full and fair opportunity to litigate the issue of Crawford's and Strachan's employment status in the underlying action.

Accordingly, Plaintiff's Motion for Summary Judgment on the issue of collateral estoppel is **GRANTED**, and collateral estoppel bars relitigation of the agency or employee status of Crawford and Strachan.

### 2.  Coverage Under VIP's Policy

Defendants David and Mary Snyder argue that there is a genuine issue of material fact as to whether Crawford is an insured under the following policy provision:

> The following are "insureds":
>
> b.  Anyone else while using with your permission a covered "auto" you own, hire or borrow . . . .

([Doc. 22-1], p. 13).

As explained above, when construing the language in an insurance policy, the Supreme Court of Appeals of West Virginia has held that "language in an insurance policy should be given its plain, ordinary meaning."  Syl. Pt. 1, **Shand, Morahan & Co.**, 345 S.E.2d 33, *overruled, in part, on other grounds by* **McMahon & Sons**, 356 S.E.2d 488.  If the provisions in an insurance policy are clear and unambiguous, "they are not subject to

judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer*, 172 S.E.2d at 715.

The policy language at issue provides that the following are insureds: "[a]nyone else who using with your permission a covered 'auto' you own, hire, or borrow." ([Doc. 22-1], p. 13). The language in the policy is clear and unambiguous. Therefore, pursuant to West Virginia case law, the Court will look to the plain and ordinary meaning of the words "own, hire, or borrow." First, Black's Law Dictionary defines "own" as "[t]o rightfully have or possess as property; to have legal title to." *Black's Law Dictionary* (9th ed. 2009). It is undisputed that Ms. Wilson, Strachan's mother, owned the car. As such, VIP did not own the car, and it is not covered under this provision. Second, Black's Law Dictionary defines "hire" as "1. To engage the labor or services of another for wages or other payment. 2. To procure the temporary use of property, usually at a set price. 3. To grant the temporary use of services." *Black's Law Dictionary* (9th ed. 2009). The parties have not argued that VIP hired Ms. Wilson to provide her car. Also, Crawford and Strachan did not have authority to borrow the car on behalf of VIP because the jury verdict in the underlying action determined that Crawford and Strachan were not VIP's agents or employees and were acting in their own independent joint venture. Thus, this provision does not apply.

Third, Black's Law Dictionary defines "borrow" as "1. To take something for temporary use. 2. To receive money with the understanding or agreement that it must be repaid, usually with interest." *Black's Law Dictionary* (9th ed. 2009). Defendants David and Mary Snyder argue that VIP borrowed Ms. Wilson's car. However, the parties do not dispute that Strachan requested the car from Ms. Wilson. ([Doc. 24], Ex. 6, p. 3). Also, Crawford picked the car up from Ms. Wilson the night before the collision. ([Doc. 24], Ex.

17

6, p. 4).  The underlying jury verdict determined that Strachan and Crawford were not agents or employees of VIP, they were not acting in the course and scope of employment of VIP, and they were operating their own independent joint enterprise.  As previously discussed, the parties are collaterally estopped from arguing otherwise.  Therefore, an agent or employee of VIP never requested to borrow the car or picked up the car from Ms. Wilson.  As a result, VIP never borrowed Ms. Wilson's vehicle, and it is not covered under the policy.  Accordingly, the Court finds that there is no coverage under the policy Lancer issued to VIP.

### 3.  The Endorsement MCS-90B Does Not Apply

Because the Court has determined that the policy does not provide coverage, the Court must now analyze the applicability of the policy's MCS-90B.  This is a question of federal law.  *Canal Ins. Co. v. Distribution Servs. Inc.,* 320 F.3d 488, 492 (4th Cir. 2003). The policy contained the federally-mandated "Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980," which is the subject of this declaratory judgment action.  The endorsement, referred to as Endorsement MCS-90, must be attached to any liability policy issued to a registered motor carrier pursuant to 49 U.S.C. §§ 13906(a)(1), 31139(b)(2) and 49 C.F.R. § 387.  The MCS-90 makes the insurer liable to third parties for any liability resulting from the negligent use of any motor vehicle by the insured, even if the vehicle is not covered under the insurance policy.

For the MCS-90B to apply, the motor carrier must be for-hire and transporting

passengers in interstate or foreign commerce.  **49 C.F.R. § 387.27**.  There are four exceptions to the applicability of the MCS-90B.  The MCS-90B does not apply to **(1)** a motor vehicle transporting only school children and teachers to or from school; **(2)** a motor vehicle providing taxicab service and having a seating capacity of less than seven (7) passengers and not operated on a regular route or between specified points; **(3)** a motor vehicle carrying less than sixteen (16) individuals in a single daily round trip to commute to and from work; and **(4)** a motor vehicle operated by a motor carrier under contract providing transportation of preprimary, primary, and secondary students for extracurricular trips organized, sponsored, and paid by a school district.  **49 C.F.R. § 387.27**.

The Fourth Circuit Court of Appeals stated "[i]t is well-established that the primary purpose of the MCS-90 [endorsement] is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers." ***Canal Ins. Co.***, 320 F.3d at 490 (quoting ***John Deere Ins. Co. v. Nueva***, 229 F.3d 853, 857 (9th Cir. 2000), *cert. denied*, 534 U.S. 1127, 122 S. Ct. 1063 (2002).  The Fourth Circuit also noted that "the MCS-90 endorsement creates a suretyship by the insurer to protect the public when the insurance policy to which the MCS-90 is attached otherwise provides no coverage *to the insured*." ***Canal Ins. Co.***, 320 F.3d at 490 (citations omitted) (emphasis added). Therefore, the insurer's obligations under the MCS-90 are triggered only when the policy to which it is attached provides no coverage to the insured.

Defendants David and Mary Snyder argue that the MCS-90B applies because it provides coverage to not only the named insured, but also to other drivers and other users. To support their argument, the Snyders rely heavily on ***Adams*** and ***Nueva***.  *See **Nueva***,

229 F.3d 853; *Adams v. Royal Indemnity Co.*, 99 F.3d 964 (10th Cir. 1996).  Although other cases have found that the MCS-90 provides coverage to not only the named insured, but also to other drivers, the other drivers were *permissive* users.  In **Adams**, Adams was severely injured in an accident involving a tractor trailer driven by Hofer and owned by his father-in-law, Geigley.   Adams obtained a judgment against Hofer. Royal Insurance Company insured Geigley, but the policy did not include the trailer driven by Hofer as a covered auto.  The court found that the insured trailer was not a covered auto under the policy, but the MCS-90 modified the policy so that all vehicles owned by Geigley were covered by the Royal Policy.  Therefore, the MCS-90 applied because Hofer had used the vehicle, owned by the insured, Geigley, and with Geigley's permission.  **Adams**, 99 F.3d at 970.  Additionally, in **Nueva**, the court held that the MCS-90's definition of "insured" included permissive users of non-covered autos since limiting the definition of "insured" to only the "named insured" on the policy would contradict the policy's terms that included permissive users of covered autos in the definition of "insureds." 229 F.3d at 855, 859.

In this case, Crawford is not an insured.  Unlike **Adams** and **Nueva**, even if the Court read out the policy language restricting an insured's status to one using a "covered auto," Crawford would still not qualify as an insured because he was not a permissive user.  The underlying jury verdict found that Crawford was not VIP's agent or employee and Crawford and Strachan operated their own independent joint venture.  There is no evidence that shows VIP, as the named insured, gave permission to Crawford to borrow and then operate Ms. Wilson's vehicle. In sum, Crawford is not a permissive user, and the MCS-90 is not applicable.

20

Plaintiff Lancer argues that **Nueva** and **Adams** do not apply to this case because Crawford is not an "insured" under the regulatory definition, which applies to the coverage afforded under the MCS-90. A MCS-90B applies only to "for-hire motor carriers transporting passengers in interstate or foreign commerce." **49 C.F.R. § 387.27**. A motor carrier is defined as including "a motor carrier's agent, officer, or representative; an employee responsible for hiring, supervising, training, assigning, or dispatching a driver; or an employee concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." **49 C.F.R. § 387.29**. However, an insured and principal are defined as "the motor carrier *named* in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." **Id.** (emphasis added). On October 5, 2005, the Federal Motor Carrier Safety Administration (FMCSA) of the Department of Transportation issued a Regulatory Guidance that intended to clarify the meaning of the term "insured" in Form MCS-90. *Regulatory Guidance for Forms Used to Establish Minimum Levels of Financial Responsibility of Motor Carriers*, 49 C.F.R. Part 387, 70 F.R. 58065-01, 2005 WL 2438280 (Oct. 5, 2005). The agency provided the following guidance:

> Question: Does the term "insured," as used on Form MCS-90B, Endorsement for Motor Carrier Policies of Insurance fo Public Liability, or "Principal", as used on Form MCS-82B, Motor Carrier Public Liability Surety Bond, mean the motor carrier named in the endorsement or surety bond?

> Guidance: Yes. Under 49 C.F.R. 387.39, "insured and principal" is defined as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." Form MCS-90B and Form MCS-82B are not intended, and do not purport to require a motor carrier's insurer or surety to satisfy a judgment against any party other than the carrier named in the endorsement or surety bond or its fiduciary.

*Id.*

Recently, district courts in the Fourth Circuit have applied the regulations to conclude that the language of the statute and regulations requires payment for a judgment against the named insured only. ***Forkwar v. Progressive N. Ins. Co., Inc.,*** 2012 WL 6562768, *8-12, __ F. Supp. 2d __ (D. Md. Dec. 14, 2012) (holding the regulation's unambiguous language defining "insured" triggers the MCS-90 only when there is a judgment against the named insured); ***Sentry Select Ins. Co. v. Thompson***, 665 F. Supp. 2d 561, 569 (E.D. Va. 2009) (holding that "in light of the unambiguous regulations defining 'insured,' and its broader statutory and regulatory context, the MCS-90 requires payment for a judgment against the named insured only."). Applying the regulations, VIP is the named insured under the MCS-90B. In the underlying action, the jury verdict determined that VIP was 0% liable and Crawford was 100% liable and that Crawford was not VIP's employee or agent. Therefore, the named insured, VIP, does not have a judgment against it, and the MCS-90B is not triggered and does not apply.[3]

## IV. Conclusion

For the foregoing reasons, Defendants David and Mary Snyder's Motion to Strike Plaintiff's Improper Reply Memorandum [Doc. 56] is **GRANTED**, Plaintiff Lancer Insurance Company's Motion for Summary Judgment [Doc. 22] and Defendants VIP Limousine Service, Ltd. and Glen M. Lee d/b/a VIP Limousine, Ltd.'s Motion for Summary Judgment [Doc. 34] are hereby **GRANTED**, and Defendants David and Mary Snyder's Motion for

---

[3]Plaintiff Lancer also argued that Crawford was not operating interstate and therefore the second exception to the MCS-90B applies. Because the Court has determined that the MCS-90B is not triggered, the Court does not address whether an exception applies.

Summary Judgment [Doc. 35] is hereby **DENIED**.  It is further **ORDERED** that this civil action be **DISMISSED and STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

**DATED**: March 11, 2013.

GINA M. GROH
UNITED STATES DISTRICT JUDGE